**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Eve Anne Pierro,

                       **Plaintiff,**

-against-

Commissioner of Social Security,

                       **Defendant.**

1:18-cv-05478 (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:**

*Pro se* plaintiff Eve Anne Pierro ("Plaintiff" or "Pierro") brings this action pursuant to § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). Presently before the Court is the Commissioner's motion for judgment on the pleadings. (*See* Mot., ECF No. 22; Def. Mem., ECF No. 23.) A response letter was filed by Plaintiff on May 9, 2019. (*See* Pl. Resp. Ltr., ECF No. 25.)

For the reasons set forth below, the Commissioner's motion is GRANTED.

**BACKGROUND**

**I.    Procedural Background**

Plaintiff filed an application for DIB on September 3, 2016, alleging disability beginning August 26, 2016 due to uncontrolled high blood pressure, a mini-stroke and recurring blindness. (Administrative Record ("R."), ECF No. 12 at 61, 147-50.) The application was denied on October 11, 2016, and pursuant to Plaintiff's request, Plaintiff appeared and testified at a hearing before Administrative Law Judge ("ALJ") Laura Michalec-Olszewski on October 4, 2017. (R. 22-59, 60, 61-67, 73.) Prior to the hearing, Plaintiff received notices from the Social Security Administration

("SSA") advising her of her right to representation and providing her with a list of potential representatives. (R. 74-85, 90-100, 112-17.) Plaintiff waived her right to representation at the hearing and appeared *pro se*. (*See* R. 22, 142.)

At the hearing, the ALJ explained to Plaintiff that she would collect missing records from Plaintiff's cardiologist and primary care doctors before issuing a decision. (R. 54-56.) Subsequent to the hearing, the ALJ left the record open in order to collect, and review, records largely consisting of Plaintiff's cardiac complaints. (R. 11, 272-384.)

On February 23, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. (R. 8-21.) The ALJ's decision became the final decision of the Commissioner on May 22, 2018, when the Appeals Council denied Plaintiff's request for review. (R. 1-5.) Plaintiff filed her Complaint in this action on June 18, 2018. (Compl., ECF No. 2.)

**II.** **Medical Evidence**

The Commissioner has provided a summary of the medical evidence contained in the administrative record. (*See* Def. Mem. at 3-8.) Plaintiff's submission does not object to the Commissioner's summary of the evidence. (*See* Pl. Resp. Ltr.) Having examined the record, the Court adopts the Commissioner's summary as accurate and complete for the purposes of the issues raised in this action. The Court discusses the medical evidence pertinent to the adjudication of this case in Discussion Section III, *infra*.

**III.** **Plaintiff's Work History**

From 2000 to 2007, Pierro served as a Staff Sergeant in the New York Air National Guard working in a variety of jobs. (R. 197, 208, 213.) From approximately 2004 to 2013, she worked as a home health aide. (R. 197, 208, 212.) Beginning in 2006, through and including the time of her

October 2017 administrative hearing, Pierro also worked as a sales marketer. (R. 34.) However, as of August 2016, she reduced her number of hours to twenty-two per week. (R. 34, 152, 171, 176.) As a sales marketer, Pierro drove to various stores to restock and set up displays for McCormick spices. (R. 34-35, 40, 183, 197, 209, 246.) As part of that job, Pierro was required to lift up to ten pounds frequently and to lift and carry up to twenty pounds occasionally. (R. 46-47, 209, 246, 260.) In 2016, Pierro earned slightly more than $19,000 per year. (R. 34, 152, 171, 176.) At the time of the hearing, she was working four days per week, earning approximately $264 weekly. (R. 34-35, 39-40.)

### IV. Plaintiff's Testimony At The October 24, 2017 Hearing

In addition to testifying about her work history (*see supra*), Pierro testified at the hearing that she cooked on a daily basis, did laundry and handled household chores. (R. 43.) Pierro testified that she had a driver's license and drove regularly. (*See* R. 33.) Her other activities included hiking, reading, swimming, taking walks about four times each week, watching television and shopping. (R. 44; *see also* R. 220.) Pierro testified that she was unable to work full time because she became very fatigued during the day, she napped often, and she had occasional symptoms of dizziness and shortness of breath. (R. 40, 45-46.) She also noted that her blood pressure was not controlled and that she had a "TIA," or transient ischemic attack,[1] in August 2015 which damaged the left ventricle of her heart. (R. 45-46.) With respect to her medical care, Pierro testified that she was treated by cardiologist Dr. Benjamin Schaefer, received treatment at North Dutchess Hospital and had recently commenced treatment with Dr. Phillip Goodwin.

---

[1] A TIA is "like a stroke, producing similar symptoms, but usually lasting only a few minutes and causing no permanent damage." *Nelson v. Colvin*, No. 16-CV-03530 (JCF), 2017 WL 1397547, at *1 n.3 (S.D.N.Y. Apr. 14, 2017) (citation omitted).

3

(R. 54-56.) The record was left open in order to provide the ALJ an opportunity to review records from these doctors. (*Id*.)

V. **The ALJ's Decision and Appeals Council Review**

Following the five-step process, *see* Discussion Section II, *infra*, the ALJ determined that Pierro did not have a disability within the meaning of the Act. (R. 17.) At step one of the sequential evaluation, although Pierro "continued to work after her onset date, working on a part-time basis, four days a week for 22 to 30 hours per week," the ALJ determined that Pierro had not engaged in substantial gainful activity from August 25, 2016, the alleged onset date, through the date of the ALJ's decision. (R. 13.)

At step two, the ALJ concluded that, while Pierro had medically identifiable conditions, none of those conditions could be considered a severe impairment because they did not impose any significant work-related limitations. (R. 14-17.) In reaching this conclusion, in addition to the medical conditions listed in Pierro's application for DIB, the ALJ considered Pierro's claims of "limiting shortness of breath and palpitations." (R. 14.) The ALJ found that the "medical records [gave] no indications of cardiovascular or respiratory abnormality," as "extensive cardiac work-up was negative, with an overall normal left ventricular function, and pulmonary function testing [had] yielded normal findings." (R. 14.) Accordingly, the ALJ found that Pierro did not have a disability within the meaning of the Act and denied her claim without proceeding to the remaining steps. (R. 14-17.)

Pierro timely requested review of the ALJ's decision by the Appeals Council. (R. 6-7, 144-146.) The Appeals Council denied Pierro's request for review on May 22, 2018. (R. 1-5.) This action was filed on June 18, 2018. (ECF Nos. 1-2.)

4

## VI. Plaintiff's Letters With New Evidence

On March 7, 2019 and May 9, 2019, Plaintiff submitted letters raising additional grounds for disability and attaching additional medical records from 2015 and 2019, as well as records from two 2019 hospitalizations that had not been presented to the ALJ. (Pl. Ltr., ECF No. 21; Pl. Resp. Ltr.) In these letters, Plaintiff described a history of post-traumatic stress disorder ("PTSD"), anxiety and depression, resulting from a severely traumatic childhood. (Pl. Ltr. at 1; Pl. Resp. Ltr. at 2.) Plaintiff acknowledged that these illnesses had not been presented to the ALJ for consideration at her hearing. (Pl. Resp. Ltr. at 2-3.)

## DISCUSSION

## I. Standard Of Review

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." *Ulloa v. Colvin*, No. 13-CV-4518 (ER), 2015 WL 110079, at *6 (S.D.N.Y. Jan. 7, 2015) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision[.]" *Ulloa*, 2015 WL 110079, at *6; *accord Johnson*, 817 F.2d at 986.

Absent legal error, an ALJ's determination may be set aside if it is not supported by substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (vacating and remanding

5

ALJ's decision). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the findings of the Commissioner as to any fact are supported by substantial evidence, those findings are conclusive. *See Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995) (citing 42 U.S.C. § 405(g)). The Court, however, will not defer to the Commissioner's determination if it is the product of legal error. *See Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012). A court also may remand a matter "to the Commissioner of Social Security for further action . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

Further, *pro se* litigants "are entitled to a liberal construction of their pleadings," and, therefore, their complaints "should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation marks and citation omitted); *see also Alvarez v. Barnhart*, No. 03-CV-08471 (RWS), 2005 WL 78591, at *1 (S.D.N.Y. Jan. 12, 2005) (articulating liberal standard in reviewing denial of disability benefits for *pro se* plaintiff).

II.     **Determination Of Disability**

Under the Act, every individual determined to have a disability and who is eligible on the basis of her income and resources is entitled to benefits. 42 U.S.C. § 1381a. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

6

has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."

42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if [the combined effects of] [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423 (d)(2)(A).

In determining whether an individual is disabled, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

The Commissioner's regulations set forth a five-step sequence to be used in evaluating DIB claims:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509 [continuous period of 12 months], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520. Under the sequential evaluation of disability, when a determination is made that a claimant is not disabled at a certain step, the adjudicator will not go on to the next step. 20 C.F.R. § 404.1520(a)(4).

### III. Analysis

#### A. The ALJ Did Not Err in Finding that Plaintiff Was Not Entitled to DIB

The ALJ found that Plaintiff had failed to meet her burden of proving that she had a severe impairment that would impose significant work-related limitations. (R. 14-17.) This finding is legally correct and supported by substantial evidence, including medical evidence from Plaintiff's own treating physician, Dr. Schaefer.

With respect to the legal basis for the ALJ's finding, the ALJ cited to the Commissioner's regulations which provide that an impairment is not severe if it does not significantly limit your physical or mental ability to do basic work activities. (R. 12 (citing 20 C.F.R. § 404.1522). The ALJ also cited to the Commissioner's ruling that an impairment "is found 'not severe' and a finding of 'not disabled' is made at [step two] when medical evidence establishes only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work." (R. 12 (citing Social Security Ruling 85-28, 1985 WL 56856, at *3 (S.S.A. 1985).)

As the ALJ noted in her decision, Plaintiff alleged that she was unable to work beginning August 25, 2016 "due to the fatigue and other residuals from a TIA and stroke, which are claimed to significantly limit her ability to perform work-related activities," because she was "too winded

8

and tired to maintain sufficient stamina for full time work;" due to temporary blindness; and since her blood pressure was "uncontrolled" (R. 15.) However, the ALJ found that "the medical record does not corroborate the level of incapacity alleged by" Plaintiff and that there were "no medical signs or laboratory findings in the record to show that any of [Plaintiff's] diagnosed conditions have resulted in significant functional limitation for an extended period." (*Id*.) These findings by the ALJ are supported by substantial evidence.

First, while Plaintiff did have a history of a TIA, which occurred in 2015, prior to Plaintiff's alleged onset of disability (R. 275, 298), the medical evidence reflects that this condition did not cause any residual limitations. (*See*, *e.g.*, R. 305 (Dr. Wootan 10/6/16 examination notes: "Recently, she had a TIA. There was no residual from the TIA. She is fully functional."); R. 327 (Dr. Goodwin 9/12/17 notes: "Hx [history] TIA/stroke w/o resid").) Second, Plaintiff's records show evidence of temporary vision impairment in September 2015 "due to migraines with poorly controlled hypertension," which resolved on its own prior to Plaintiff's alleged onset date of disability. (R. 272-77.)

In addition, Plaintiff alleges that she suffers from cardiac and pulmonary-related conditions, including supra ventricular tachycardia,[2] left ventricular scarring, and left ventricular damage. (R. 247-49, 252-53.) These conditions are present in Plaintiff's medical records, but the medical evidence does not show any residual limitation as a result.

Treatment notes from September 2, 2015 at Health Quest Northern Dutchess Hospital refer to the patient as having "tachycardia" (R. 272-73); on October 16, 2016, Dr. Wootan

---

[2] Tachycardia, generally, is defined as "excessive rapidity in the action of the heart; the term is usually applied to a heart rate above 100 beats per minute. . . ." *Dorland's Illustrated Medical Dictionary* 1867 (32nd ed. 2012).

9

diagnosed her with "Left ventricular hypertrophy,"[3] (R. 307); and Plaintiff's medical records present a history of "[c]ardiology . . . tachycardia, 'thickened / scarred [left ventricle].'" (R. 325, *see also* R. 368.) Moreover, Plaintiff often reported feeling heart palpitations[4] during office visits. (*See e.g.*, R. 358, 356, 311, 332, 349, 353, 366.) However, the assertions of ongoing, limiting cardiac problems are contradicted by the normal objective diagnostic findings and the examination reports of Plainitff's treating cardiologist, Dr. Schaefer. (*See*, *e.g.*, R. 351, 363, 371, 372.) Dr. Schaefer determined that Pierro's heart palpitations were non-cardiac, and were likely a symptom of anxiety. (*See e.g.*, R. 358 (Dr. Schaefer 5/10/17 examination notes: "Given a negative workup in the past, I believe that her palpitations and chest pain are noncardiac in nature, she is certainly hypertensive, but this also seems in part driven by anxiety."), 356 (Dr. Schaefer 6/7/17 examination notes: "palpitations are intermittent, mostly related to anxiety, not associate with activity"), 351 (Dr. Schaefer 8/30/17 examination notes: "[Pierro's] cardiac issues appear stable, although she still is asymptomatic. I think at least part of this is due to fairly intense anxiety disorder"), *see also* R. 311, 332, 349, 353, 366.) Results of cardiac tests, including an electrocardiogram ("EKG")[5] and echocardiogram,[6] were normal, and there was no evidence of

---

[3] Left ventricular hypertrophy is defined as the "enlargement and thickening (hypertrophy) of the walls of [a] heart's main pumping chamber (left ventricle)." *Left ventricular hypertrophy*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/left-ventricular-hypertrophy/symptoms-causes/syc-20374314(last visited July 8, 2019); *see also Dorland's* at 898.

[4] Palpitations refer to "a subjective sensation of an unduly rapid or irregular heartbeat." *Dorland's* at 1365.

[5] An EKG is "a test that records the electrical activity of your [heart] through small electrode patches that a technician attaches to the skin of your chest, arms, and legs." *Heart Disease and Electrocardiograms*, WebMD, https://www.webmd.com/heart-disease/electrocardiogram-ekgs#1 (last visited July 8, 2019).

[6] "An echocardiogram (echo) is a graphic outline of the heart's movement." *Echocardiogram*, Cleveland Clinic, https://my.clevelandclinic.org/health/diagnostics/16947-echocardiogram (last visited July 8, 2019).

the ventricular damage asserted by Pierro. (R. 363 (Dr. Schaefer 2/22/17 examination notes: ("Her echocardiogram was normal without presence of [left ventricular hypertrophy]."), 371, 378, 380, 383-84.) Lastly, Pierro's records do not show any evidence of heart failure.

Pierro also complained of pulmonary issues, namely shortness of breath on June 7, 2017 and August 3, 2017. (R. 349, 353.) Yet, pulmonary function testing was within normal limits. (R 331.) Her treating physician reported that "[l]ungs were clear to percussion[7] and auscultation.[8] Breathing was unlabored." (R. 354.)

The medical evidence shows that Plaintiff's primary condition was hypertension and that, throughout the relevant period, her blood pressure readings were high. (*See*, *e.g.*, R. 326, 356, 361, 367.) However, as the ALJ observed (R. 15-16), Plaintiff's hypertension generally was well controlled with medication, except when Plaintiff discontinued her medication on her own. (*See*, *e.g.*, R. 299, 349-50, 353, 372-73, 382.)

The medical examinations by Drs. Schaefer, Goodwin and Wootan failed to show that any of Plaintiff's conditions, including hypertension, produced any significant limitations. (*See* R. 306-08, 325-27, 332-34, 349-51, 353-55, 356-58, 360-62, 363-65, 366-68, 380-82.) Notably, in the Medical Source Statement that Plaintiff's own treating cardiologist, Dr. Schaefer, submitted to the SSA, he did not note any impairments. Dr. Schaefer noted that Plaintiff could "continuously"

---

[7] Percussion is performed by striking a part of the body with short, sharp blows in order to elicit a sound that can be relied upon for diagnostic purposes. *Dorland's* at 1409. Percussion of the lungs is performed for the purpose of determining whether a patient's lungs fill fully with air and whether the diaphragm moves within the normal range. *Lungs: Percussion*, Loyola University Medical Education Network, http://www.meddean.luc.edu/lumen/meded/medicine/pulmonar/pd/pstep28.htm (Last visited July 11, 2019).

[8] Auscultation refers to "the act of listening for sounds within the body, chiefly for ascertaining the condition of the lungs." *Dorland's* at 180.

lift and carry 51 to 100 pounds; that she could sit, stand or walk eight hours without interruption; and that Plaintiff had no work-related activities affected by any impairments. (R. 341-46.)

In sum, the Court finds no error in the ALJ's step-two finding that Plaintiff did not have a severe impairment or combination of impairments expected to last at least twelve months. *See Britt v. Astrue*, 486 F. App'x 161, 163 (2d Cir. 2012) (no error in ALJ's step two finding of non-severe impairments, where plaintiff failed to "furnish the ALJ any medical evidence showing how [his] alleged impairments limited his ability to work"). Step Two is applied to screen out *de minimis* claims, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), like the claims asserted by the Plaintiff in this case.

### B. Newly Submitted Evidence Does Not Warrant Remand

In Plaintiff's March 7, 2019 letter and May 9, 2019 response letter, Plaintiff submitted to the Court new evidence. (*See* attachments to Pl. Ltr. at 3-5; Pl. Resp. Ltr. at 4-19.) This evidence consisted of an echocardiogram report dated December 16, 2015, relating to a September 2, 2015 echocardiogram, showing "mild concentric left ventricular hypertrophy" and "[m]inimally thickened mitral valve[9] without significant stenosis[10] or prolapse"[11] with a "trace of mitral regurgitation."[12] (*Id*. at 16-19.) In addition, Plaintiff provided the Court with medical records

---

[9] The mitral valve refers to the left atrioventricular valve. *Dorland's* at 1170.

[10] Stenosis is defined as "an abnormal narrowing of a duct or canal." *Dorland's* at 1769.

[11] Prolapse means "falling down, or sinking." *Dorland's* at 1525. "Mitral valve prolapse (MVP) occurs when the leaflets of the mitral valve bulge (prolapse) into the heart's left upper chamber (left atrium) like a parachute during the heart's contraction." *Mitral valve prolapse*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/mitral-valve-prolapse/symptoms-causes/syc-20355446 (last visited July 11, 2019).

[12] Mitral regurgitation is "the backflow of blood from the left ventricle into the left atrium, owing to mitral valve insufficiency, it may be acute or chronic, and is usually due to mitral valve prolapse, rheumatic heart disease, or a complication of cardiac dilation." *Dorland's* at 1121.

showing two hospitalizations in March 2019 for "hypertensive urgency" and "[e]ssential hypertension" (attachments to Pl. Resp. Ltr. at 4-9) and doctors' visits in January and April 2019 diagnosing Plaintiff with chronic migraine, essential hypertension, TIA, depression, anxiety and PTSD, among other things. (*Id*. at 10-15.) Plaintiff admitted that the 2015 records were not submitted to the ALJ for review prior to her decision or to the Appeals Council; nor were they part of the administrative record before this Court. The 2019 records that Plaintiff belatedly submitted post-dated the ALJ's decision, Plaintiff's Appeals Council submission and filing of the instant action, and thus also were not part of the administrative record before this Court.

In order for the Court to remand this case for further proceedings on the basis of "newly-submitted evidence," Plaintiff must make the following showings: "that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. . . . [lastly, Plaintiff] must show (3) good cause for her failure to present the evidence earlier." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (internal quotations and citations omitted). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner of Social Security] to decide claimant's application differently." *Id*.

Here, Plaintiff argues that her anxiety and inability to hire or retain counsel was the reason she failed to present the evidence earlier. (*See* Pl. Resp. Ltr. at 2-3.) Plaintiff does not make a showing as to why the newly submitted evidence should support a remand. (*Id*.) Even assuming that Plaintiff had good cause for not submitting the medical evidence sooner, the newly submitted evidence does not warrant remand, as it is not material. *See Klos v. Comm'r of Soc.*

*Sec.*, 439 F. App'x 47, 48 (2d Cir. 2011) (affirming denial of remand on basis that evidence submitted for first time to district court was not material to plaintiff's disability claim).

Plaintiff's 2015 echocardiogram was performed almost a year prior to her August 26, 2016 stated date of disability at the same hospital where Plaintiff's treating cardiologist, Dr. Schaefer, is affiliated – Health Quest Northern Dutchess Hospital. Significantly, Dr. Schaefer's 2017 Medical Source Statement failed to note any impairments. (*See* Section III(A), *supra*; R. 341-46.) Indeed, in his 2017 examination notes, Dr. Schaefer references a subsequent echocardiogram, performed on February 15, 2017, with no evidence of left ventricular hypertrophy. (R. 383-84 (Transthoracic Echo Report findings: "There is no left ventricular hypertrophy observed. . . . The overall left ventricular systolic function is normal."); 363 (Dr. Schaefer 2/22/17 examination notes: ("Her echocardiogram was normal without presence of [left ventricular hypertrophy].")

"New evidence is material only if there is a 'reasonable possibility' that it would have influenced the Commissioner to decide the claimant's application differently." *Armstrong v. Comm'r of Soc. Sec.*, 672 F. App'x 102, 103 (2d Cir. 2016). Here, however, when viewed in the context of the other medical evidence, the 2015 evidence actually supports the ALJ's decision, because Plaintiff's condition had improved since Plaintiff's alleged onset date. Due to her treating physician's subsequent findings of no limitations, the 2015 records are not material. *See Mulrain v. Comm'r of Soc. Sec.*, 431 F. App'x 38, 39-40 (2d Cir. 2011) (Plaintiff's "new evidence fails to satisfy this standard because it is not material to [her] disability claim. . . . [as] the medical reports here do not suggest that [Plaintiff's] condition was more serious than previously thought. . . . Therefore, these materials are neither probative nor likely to have affected the ALJ's consideration of [Plaintiff's] disability claim").

The 2019 medical reports submitted by Plaintiff refer in part to hypertension and TIA which are already well documented in the other medical records, and are cumulative. *Armstrong v. Comm'r of Soc. Sec.*, 672 F. App'x 102, 103 (2d Cir. 2016) ("Assuming Armstrong has good cause for his earlier failure to obtain and produce certain of his own medical records, this additional evidence is either irrelevant or cumulative of medical evidence already considered by the ALJ."); *see also Clark v. Comm'r of Soc. Sec.*, No. 14-CV-1349 (TJM) (ATB), 2015 WL 10475327, at *8 (N.D.N.Y. Oct. 21, 2015), *report and recommendation adopted*, 2016 WL 1020848 (N.D.N.Y. Mar. 14, 2016) (newly submitted information that already is present in the record was "considered in this court's analysis" and "would be considered 'cumulative' of what is already in the record").

The 2019 records also refer to depression, anxiety and PTSD; conditions which were not claimed in Plaintiff's disability application and were not presented to the ALJ for consideration at Plaintiff's hearing. (Attachments to Pl. Resp. Ltr. at 4-15; R. 14 (listing Plaintiff's "medically determinable impairments;" 63 ("[Plaintiff] is a 49 yr old who alleges disability due to [high blood pressure], mini stroke, & reoccurring blindness.").) As the ALJ did not evaluate the illnesses referenced in the newly submitted 2019 materials, they are not instructive on whether Plaintiff's evaluated condition has worsened. *See Fox v. Barnhart*, 137 F. App'x 395, 396 (2d Cir. 2005) (declining to remand disability claim on basis of newly submitted evidence, where evidence identified "an impairment of her shoulders," whereas original disability claim was submitted on basis of "effects of osteoarthritis on her back, knees, hips, neck, and hands."); s*ee also Aden v. Barnhart*, No. 01-CV-05170(LAK)(RLE), 2003 WL 21105184, at *2 (S.D.N.Y. May 8, 2003), *report and recommendation adopted*, No. 01-CV-05170 (LAK), 2003 WL 21361723 (S.D.N.Y. June 12, 2003) ("Aden's newly submitted medical records are for the time subsequent to the ALJ's

decision, not prior to. If this Court were to comply with Aden's request to view current medical documentation as proof of error in the ALJ's decision, courts would be in perpetual review of social security claims."). The records recently submitted by Plaintiff do not warrant remand, since the new evidence is not material.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is GRANTED and this case is dismissed. The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to mail a copy of this Opinion and Order to the *pro se* Plaintiff.

DATED:    July 24, 2019
          New York, New York

_____
**STEWART D. AARON**
**United States Magistrate Judge**